40. Despite its contractual promise to provide ±1,000 metric tons (± 10%) of #1 quality pink salmon to FMI, and despite the fact that it produced well over 1,000 metric tons during the 2005 season, Global failed to complete delivery of any fish under the contract beyond the 295.1 metric tons contained in the first two shipments.

41. Despite its contractual promise to provide a minimum of ±1,000 metric tons(± 10%) of #1 quality pink salmon to FMI, and despite the fact that it delivered only 295.1 metric tons of substandard quality under the Global Contract, Global sold significant quantities of salmon directly to other purchasers, many of whom had been identified by FMI and/or Sang Jin.

42. Despite its contractual promise to provide specified top quality fish to FMI, Global failed to provide fish meeting the quality standards of the Global Contract.

43. On information and belief, Global diverted a significant quantity of top quality pink salmon to other purchasers in violation of its contractual commitments under the Global Contract. Global did this to capitalize on the rising market price for pink salmon so that Global could make greater profits than it would have if it had adhered to the Global Contract.

44. Despite its contractual promise to provide FMI with a right of first refusal for any #1 quality pink salmon produced beyond the ±1,000 metric tons of #1 pink salmon it had exclusively promised to FMI, and despite the fact that it produced well over 1,000 metric tons of pink salmon (believed to be approximately 2,000 metric tons), Global failed to offer FMI any fish under FMI's right of first refusal. Global instead, in

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 11 of 19

Case No. 3AN-05-_____ CI

Exhibit 2
page 11 of 26

an apparent ploy to benefit itself from the rising market price, sold this fish directly to other purchasers, some of whom were identified by FMI and/or Sang Jin.

45. Despite the fact that it has been paid in full for all fish actually delivered under the Global Contract, Global has wrongfully retained and refused to release the $110,000 paid by FMI to Global as an advance payment for future deliveries under the Global Contract.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

46. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

47. As described above, Global has breached the Global Contract in numerous respects by, among other actions: failing to deliver fish that met the quality standards under the Global Contract; failing to deliver the promised quantity of fish; failing to timely present the necessary documents to release payment to FMI under the applicable letters of credit; failing to allow FMI the opportunity to purchase fish under its right of first refusal; demanding deviations from the agreed payment mechanism; and demanding advance payment for fish that it failed to deliver.

48. FMI has been damaged by Global's breaches of contract.

### SECOND CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

Page 12 of 19

FMI Food Marketers International v. Global Seafoods North America

Case No. 3AN-05-_____ CI

Exhibit 2
page 12 of 26

50. There is a covenant of good faith and fair dealing implied in the Global Contract.

51. Global failed to deal with FMI fairly and in good faith in numerous ways, including without limitation the following:

    a. Global purposefully withheld the documents necessary to trigger payment under the letter of credit in order to pressure FMI to accede to Global's inappropriate demands to avoid inspection of the pink salmon delivered by Global.

    b. Global demanded to be paid for product prior to delivery, contrary to the contract terms, to avoid inspection and to improve its position with respect to the issue raised by its breach of the quality provisions of the Global Contract.

    c. Global demanded and kept advance payment for product that it failed to deliver.

    d. Global delivered fish of a substandard quality as defined in the Global Contract, and failed to make any effort to cure its breach of the quality provisions of the Global Contract.

    e. Global sold salmon directly to the purchasers that had been identified by FMI and/or Sang Jin, thus depriving FMI of the benefits of its efforts and the benefit of its bargain with Global.

    f. Global failed to offer to FMI, under the right of first refusal provisions of the Global Contract, all pink salmon of high quality produced by Global, and instead, sold its high quality salmon directly to other purchasers.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

Page 13 of 19

FMI Food Marketers International v. Global Seafoods North America

Case No. 3AN-05-_____ CI

Exhibit 2
page 13 of 26

52. FMI was significantly damaged in many ways by Global's various unfair and/or bad faith acts.

### THIRD CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

53. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

54. Global was aware that FMI had contracted with Sang Jin to resell the salmon that Global was obligated to supply FMI under the contract, and that Sang Jin had contracted to resell the salmon to purchasers in China, Thailand, and Korea.

55. By failing and/or refusing to supply salmon of the required quality and quantity level, Global knowingly and intentionally caused FMI and, in turn, Sang Jin, to breach their contractual obligations to supply a certain quantity and quality of pink salmon.

56. Global's actions damaged FMI by depriving it of the profits it would have earned under its resale contract, undermining its reputation and good will, and creating liability for FMI under the Sang Jin Contract.

### FOURTH CAUSE OF ACTION
### NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS

57. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

58. Global knew or should have known that FMI had contracted with Sang Jin to resell the salmon that Global was obligated to supply FMI under the Global Contract,

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 14 of 19

Case No. 3AN-05-_____ CI

Exhibit 2
page 14 of 26

and that Sang Jin had contracted to re-sell the salmon to purchasers in China, Thailand, and Korea.

59. By failing and/or refusing to supply salmon of the required quality and quantity level, Global negligently caused FMI to breach its contractual obligations under the Sang Jin Contract.

60. Global's actions damaged FMI by depriving it of the profits it would have earned under its resale contract, undermining its reputation and good will, and creating liability for FMI under the Sang Jin Contract.

### FIFTH CAUSE OF ACTION
### INTENTIONAL / NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

61. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

62. Global knew or should have known that FMI had contracted with Sang Jin to resell the salmon that Global was obligated to supply FMI under the Global Contract, and that Sang Jin had contracted to re-sell the salmon to purchasers in China, Thailand, and Korea.

63. By failing and/or refusing to supply the contracted quantity and quality of pink salmon to FMI, Global either knowingly and intentionally or negligently caused FMI to breach its contractual obligations under the Sang Jin Contract. By undermining FMI's ability to produced a promised quantity and quality of product, Global either

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 15 of 19

Case No. 3AN-05-_____ CI

Exhibit 2
page 15 of 26

knowingly and intentionally or negligently damaged and undermined FMI's reputation as a reliable wholeseller of seafood products.

64. Global undertook this course of action with the intent of selling its pink salmon directly in the markets and to the customers that had been developed for that salmon by FMI and Sang Jin in order to profit from the strong market conditions.

65. Through this course of conduct, Global deprived FMI of the ability to take advantage in the future of the markets and customers it had developed. This has caused FMI financial harm.

## SIXTH CAUSE OF ACTION
## CONVERSION/THEFT

66. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

67. Global demanded and received a payment of $110,000 from FMI as a condition of Global releasing documents for 4 containers of fish for which Global had already been paid and as an advance for Global's future deliveries of pink salmon under the Global Contract.

68. Global failed to deliver and present documents for any pink salmon after the $110,000 advance.

69. Global has been paid in full for the 295.1 metric tons of pink salmon it delivered to FMI.

70. Despite demand, Global has refused to return the $110,000 advance to FMI.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 16 of 19

Case No. 3AN-05-_____ CI

Exhibit 2
page 16 of 26

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES ACT

71. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

72. Global's actions as described herein constitute unfair trade practices within the meaning of Alaska's Unfair Trade Practices Act, including but not limited to AS 45.50.571(b)(4), (6), (11), (12) and (c).

73. FMI has been damaged by Global's unfair trade practices, and is entitled to treble damages and actual attorney's fees and costs under the statute.

## EIGHTH CAUSE OF ACTION
## FRAUD/MISREPRESENTATION

74. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

75. Global either knowingly and intentionally, or negligently, misrepresented to FMI on multiple occasions both the quantity and quality of pink salmon it would be able to produce in the 2005 fishing season.

76. Global requested a $110,000 advance payment for future deliveries of pink salmon of a specified quality and quantity, which it either knew or should have known it would not make.

77. FMI reasonably and foreseeably relied on Global's misrepresentations by, without limitation, committing itself to quantity and quality requirements that, due to

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 17 of 19

Case No. 3AN-05-_____CI

Exhibit 2
page 17 of 26

Global's misrepresentations, it would not be able to meet and by forwarding a $110,000 advance payment to Global.

78. Global's misrepresentations have damaged FMI by depriving it of profits it would have earned under its re-sale contract, creating liability for FMI under its Sang Jin Contract, damaging and undermining its reputation and good will, and depriving FMI of the use and benefit of the $110,000 it paid to Global.

### NINTH CAUSE OF ACTION
### PUNITIVE DAMAGES

79. The allegations and averments set forth in the previous paragraphs are incorporated herein as if fully set forth.

80. Global's actions as described herein constitute outrageous conduct, and conduct evidencing a willful disregard for the rights of others, such that an award of punitive damages against Global is justified.

### PRAYER FOR RELIEF

WHEREFORE FMI requests the following relief against Global:

1. That judgment be entered in favor of FMI against Global in an amount exceeding $50,000, with the exact amount to be proven at trial;

2. That FMI be awarded treble damages pursuant to AS 45.50.531;

3. That FMI be awarded punitive damages against Global in an amount to be determined at trial;

4. That FMI be awarded its full costs and attorney's fees incurred in bringing this action pursuant to AS 45.50.537;

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 18 of 19

Case No. 3AN-05-_____ CI

Exhibit 2
page 18 of 26

5.  That FMI be awarded its costs and fees incurred in bringing this action pursuant to the provisions of the Alaska Civil Rules;

6.  That any and all damages be subject to pre- and post-judgment interest at the appropriate rate; and

7.  Any further relief that this Court may deem just and equitable.

DATED this 16th day of December, 2005, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By: /s/ *signature*
Michael R. Mills, ABA# 8911074
Michael A. Grisham, ABA# 9411104

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 19 of 19
4847-1210-4704\1 12/16/2005 11:03 AM

Case No. 3AN-05-_____ CI
Exhibit 2
page 19 of 26

**FMI**
FOOD MARKETERS INTERNATIONAL LTD.

e-m: bholme@salmoncanada.com
web: www.salmoncanada.com

#233 - 11951 Hammersmith Way,
Richmond, B.C. V7A 5H9
Canada
Tel: (604) 275-3664
Fax: (604) 275-3624

| PURCHASE CONFIRMATION #FMI-224 (amended) |

Date: February 9, 2005

To: Global Seafoods North America
11100 NE 8th Street #310
Bellevue, WA 98004
USA

Attention: Mr. Oleg Nikitenko - President

With reference to telcon and our e-mail dated February 7, 2005, we hereby re-confirm having bought from you as follows as per this #FMI-224 (amended):

Product: Alaskan Frozen Pink Salmon H&G [Bloodline removed (*)] of 2005 production.

Size: Average 900 gr. (min. 750 gr.) per fish.

Quantity: min. 1,000 MT (+/- 10%)

Price: US$ 1,150.00/MT c&f Qingdao or Dalian (China).

Shipment: Spread ex Kodiak (Alaska) during Jul/Aug/Sep/Oct, 2005.

Packing: 16 kg blocks (in bags - marked in Chinese symbols).

Payment: By our Transferable Letters of Credit to be opened prior to shipments and payable "At Sight"

Note: (*) - FMI agree to finance Vacuum cleaning system required for Bloodline removal (valued at: about US$ 50,000 fob point of shipment) for your repayment by deductions off product cost for first 10 x 40' FCL at min. US$ 5,000 per container. In any event, full/final repayment of said US$ 50,000 to be completed not later than Oct 31, 2005.

Quality:
a: Meat color:   ASMI P.3/up
b: Skin color:   ASMI "A" - "D" (possibly few "E")
c: Jelly/chalky condition and severe bruising not permitted.
   ┌ outside

TOTAL P.01

Exhibit 2
page 20 of 26

EXHIBIT A
Page 1 of 2