Michael R. Mills, ABA# 8911074
Michael A. Grisham, ABA# 9411104
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Attorneys for FMI Food
Marketers International, Ltd.

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

FMI FOOD MARKETERS
INTERNATIONAL, LTD.

                 Plaintiff

vs.

GLOBAL SEAFOODS NORTH
AMERICA, LLC

                 Defendant

Case No. 3AN-05-14099 CI

### ERRATA TO COMPLAINT

Plaintiff FMI Food Marketers International, Ltd., ("FMI"), hereby files an errata to its Complaint filed December 16, 2005. The Prayer for Relief, paragraph 1, should read "...FMI against Global in an amount exceeding $100,000, with the ...." No other changes to the Complaint were made.

Exhibit 4
page 1 of 28

DATED this 28th day of December, 2005, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By: _____
Michael R. Mills, ABA# 8911074
Michael A. Grisham, ABA# 9411104

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 28, 2005, a true and correct copy of this document was served by mail / hand delivery / fax on:

Mark Manning

_____
Certification Signature

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

ERRATA TO COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 2 of 2

Case No. 3AN-05-14099 CI

Exhibit 4
page 2 of 28

Michael R. Mills, ABA# 8911074
Michael A. Grisham, ABA# 9411104
DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Attorneys for FMI Food
Marketers International, Ltd.

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| FMI FOOD MARKETERS INTERNATIONAL, LTD.<br><br>                    Plaintiff<br>vs.<br><br>GLOBAL SEAFOODS NORTH AMERICA, LLC<br><br>                    Defendant | <br><br><br><br><br><br><br><br>Case No. 3AN-05-14099 CI |

## COMPLAINT

Plaintiff FMI Food Marketers International, Ltd., ("FMI"), by and through its attorneys Dorsey & Whitney, LLP, hereby alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. FMI is a Canadian corporation, with headquarters in Richmond, British Columbia, Canada. FMI is in all ways qualified to bring this action.

2. Global Seafoods North America, LLC, ("Global") is a limited liability company organized under the laws of the State of Washington, and authorized to do

Exhibit 4
page 3 of 28

business in Alaska as a foreign corporation. Global owns and operates a fish processing plant in Kodiak, Alaska.

3. This Court has jurisdiction over this matter, and venue is proper in the Third Judicial District.

## GENERAL ALLEGATIONS

4. FMI is a seafood broker dealing primarily in the wholesale purchase and resale of Pacific salmon, and is an active participant in the market for Alaskan seafood. FMI purchases seafood from local processors and re-sells the seafood to international wholesale customers, primarily in Asia.

5. In February of 2005, FMI and Global entered into a contract in which Global agreed to sell frozen pink salmon to FMI.

6. Under this contract, which FMI proposed on February 9, 2005, and to which Global agreed on February 16, 2005, Global agreed to FMI supply ±1,000 metric tons (± 10%) of #1 quality Alaskan frozen pink salmon at a guaranteed price of $1,150 per metric ton c&f Qingdao, China. A copy of the contract is attached as **Exhibit A**.

7. On or about April 29, 2005, Global and FMI agreed to amend the terms of their February agreement. FMI agreed to a price increase of $170 per metric ton (from $1,150 to $1,320), and Global granted FMI a right of first refusal for all additional pink salmon that Global produced beyond the ±1,000 metric tons covered by the contract. This amendment specifically incorporated all other terms and conditions of the February Agreement. A copy of the Amendment is attached as **Exhibit B**. (Together the February

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

Page 2 of 19

FMI Food Marketers International v. Global Seafoods North America

Case No. 3AN-05-14099 CI

Exhibit 4
page 4 of 28

16, 2005 contract and April 29, 2005 Amendment shall be referred to as the "Global Contract").

8. As evidenced by the increase in price to Global contained in the Amendment, the market price for pink salmon was increasing in early 2005 and continued to increase throughout 2005.

9. The Global Contract contained specifications regarding both the condition and quality of the fish. The salmon was to be headed and gutted, with the bloodline removed. The Global Contract also specified that the salmon was to be of #1 quality, with an Alaska Seafood Marketing Institute ("ASMI") meat color rating of P.3 or above, and an ASMI skin color rating of "A" – "D." Fish with severe bruising or a jelly/chalky condition were not permitted.

10. In order to assist Global with producing the fish in the required condition, FMI agreed to advance Global approximately $50,000 to finance the purchase of a vacuum cleaning system for Global's Kodiak plant that would allow Global to efficiently remove the bloodline. On March 15, 2005, FMI did advance $52,200 to Global for this purpose. This sum has been repaid by Global.

11. The Global Contract called for Global's payment for the pink salmon to be made through a transferable letter of credit, payable "at sight." This very same payment method had been used in 2004 between Global and FMI.

12. Under this payment method, the purchaser of the salmon from FMI opened a letter of credit at the Industrial Bank of Korea in favor of FMI (1st Beneficiary). The advising bank was HSBC Bank Canada which, on request by FMI, transferred said letter

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 3 of 19

Case No. 3AN-05-14099 CI

Exhibit 4
page 5 of 28

of credit to Global (2nd Beneficiary) through Wells Fargo. The Letter of credit price to Global was the c&f price as contracted with them under FMI-224. To trigger a payment under the letter of credit, Global would present, within a specified time frame, to its bank in Seattle (Wells Fargo) certain documents specified in the Global contract demonstrating that a particular quantity of pink salmon had been properly shipped as directed by FMI. Global's Bank would then present said documents to FMI's bank, which would in turn present the documents to the Industrial Bank of Korea to trigger the payment stream back through FMI's bank and to Global's bank. This is a customary structure for payment in the international import/export transactions and, as noted, was the identical payment mechanism between FMI and Global in 2004. An overview of the letter of credit structure is outlined on **Exhibit C**.

13. The Global Contract specified the documents that Global would be required to present in order to trigger payment under the letter of credit. Global was also aware that the letters of credit contained a timeliness requirement, and that in order to trigger payment under the Korean letter of credit, the required documents would have to be timely presented. Additionally, prior to Global's shipment of pink salmon, the required letter of credit was opened, and a copy of such letter of credit provided to Global, so that Global was on actual notice of the timeliness and documentation requirements under the letter of credit

14. FMI took a number of steps in reliance on the Global Contract, on representations made by Global, and on Global's delivery of satisfactory quality and quantity of pink salmon in 2004.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT
Page 4 of 19

FMI Food Marketers International v. Global Seafoods North America
Case No. 3AN-05-14099 CI

Exhibit 4
page 6 of 28

15. To achieve its profit on the pink salmon it had purchased for Global, FMI entered into a contract with an Asian fish broker, Sang Jin Trading Co. ("Sang Jin"), to sell the ±1,000 metric tons of frozen pink salmon that it had agreed to buy from Global under the Global Contract. FMI also granted Sang Jin a right of first refusal as to any additional #1 quality pink salmon to which FMI was entitled under the Global Contract, and represented that, because of its right of first refusal with Global, FMI might have significant additional quantities of salmon to sell if the harvest was good. The terms of the contractual relationship between FMI and Sang Jin were memorialized in a contract dated February 16, 2005 (attached as **Exhibit D**) and an amendment dated April 29, 2005 (attached as **Exhibit E**) (together the Contract and Amendment are referred to as the "Sang Jin Contract"). In all ways, except price, the Sang Jin Contract mirrors the Global Contract.

16. In reliance on FMI's commitments under the Sang Jin Contract, and based upon Global's commitments under the Global Contract, Sang Jin in turn sought and found purchasers for the pink salmon to be delivered by Global, and represented to such customers that the pink salmon would be of the quality and quantity promised in the Sang Jin Contract and Global Contract.

17. The quantity that Global promised to provide amounted to approximately 45 cargo containers worth of fish, weighing just over 20 metric tons per container. FMI (and Sang Jin) understood that the fish would be shipped in stages, with shipments being made as the salmon catch came into Global's plant and was processed.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

Page 5 of 19

FMI Food Marketers International v. Global Seafoods North America

Case No. 3AN-05-14099 CI

Exhibit 4
page 7 of 28

18. FMI (and Sang Jin) understood that the fish would be transported from Global's plant in Kodiak to Dutch Harbor, where it would be loaded onto cargo ships bound for Asia. As in 2004, FMI would inform Global of the final shipping destination of the product when the product was ready to ship.

19. On or about August 9, 2005, Global informed FMI that it wanted to deviate from the Global Contract term requiring the removal of the bloodlines from all of the fish Global was to supply under the contract. This request was made despite Global's specific contractual promise to the contrary and despite the fact that FMI had provided financing for Global to purchase a vacuum cleaning system for precisely this purpose.

20. Global requested FMI to accept this significant deviation from the contract terms without any downward adjustment in the price Global would receive. Global requested this accommodation to protect itself from the effect of increased market prices for the fresh caught fish it purchased for processing.

21. During discussions on this issue, Global continued to assure FMI that the pink salmon Global was processing was of #1 quality (as required under the Global Contract), that Global would meet the quantity requirement of the Global Contract, and that Global expected to have additional salmon available for FMI to purchase pursuant to FMI's right of first refusal.

22. Based on Global's assurances regarding the quality and quantity of the fish it would produce, and in a demonstration of its good faith commitment to Global under the contract, FMI agreed to accept approximately 50% of the salmon with the bloodline

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 6 of 19

Case No. 3AN-05-14099 CI

Exhibit 4
page 8 of 28

still in, with no downward adjustment of the price. This adjustment was made through extensive effort and expenditure of good will by both FMI and Sang Jin.

### FIRST SHIPMENT – SEVEN CONTAINERS

23.    Global's first shipment of frozen pink salmon amounted to seven (7) containers of fish. One container of this shipment left Dutch Harbor on August 23, 2005 and arrived in Qingdao, China, on September 6, 2005. The remaining six containers followed shortly thereafter. Global was tardy in presenting the required documents to release payment under the letter of credit, and failed to meet the timeliness requirement of the letter of credit. The end purchasers, however, agreed to accept discrepant documents to allow for the late presentation of documents. This concession was done solely to accommodate Global's failure to timely present the required documents.

24.    This shipment of salmon did not meet the quality requirements under the Global Contract and the Sang Jin Contract. There was significant bruising of the fish, the meat and skin color did not meet the specified ASMI range, and a significant amount of the meat was in poor condition. Because of the substandard condition of the fish, the end customers demanded a 15 – 19 % discount on the price. This demand was based on the estimated amount of the fish that was unsuitable for the customer's intended purpose because of its deviation from the quality standards specified in the Global Contract and Sang Jin Contract.

25.    Although it was responsible for failing to meet the quality specifications of the contract, Global refused to offer any rebate or credit to the customer. FMI was forced

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 7 of 19

Case No. 3AN-05-14099 CI

Exhibit 4
page 9 of 28

to provide, from its own funds, a payment of $35,394 in order to satisfy the customer's damages due to Global's breach of the quality provisions of the contract.

26. At FMI's expense, Global sent its quality control inspector in China to inspect this first shipment of fish. Global's quality controller prepared a report, but, despite the fact that FMI paid for the inspection and has demanded to see the report, Global has refused to release the report to FMI. FMI has been told by Sang Jin representatives that the inspector found the salmon in a condition reported to be "the worst product seen in a long time."

### SECOND SHIPMENT – SIX CONTAINERS

27. Global's second shipment of salmon amounted to six (6) containers of frozen pink salmon. Four (4) of these containers went to a Sang Jin customer in Bangkok, Thailand, which had demanded that it only receive fish with the bloodline removed. The other two containers were offloaded at Qingdao, China. Global was paid in full for all of these containers.

28. There remain quality concerns regarding the six containers, and FMI believes the customers will request a price concession similar to the one requested as to the first shipment of seven containers. Any such request, if verified and addressed by FMI, will increase the damages caused by Global.

### ADVANCE PAYMENT

29. Despite the fact that it had been paid in full for all of its previous shipments, Global expressed concern that it would not be paid for the other containers of

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

Page 8 of 19

FMI Food Marketers International v. Global Seafoods North America
Case No. 3AN-05-14099 CI
Exhibit 4
page 10 of 28

fish it was shipping due to quality concerns of the type that arose with respect to its first shipment.

30. Global informed FMI on September 16, 2005, that it wanted quicker payment than the letter of credit mechanism that had been agreed upon for 2004 and 2005. Global withheld release of the documentation for 4 containers even though it had been fully paid for those 4 containers. Global would not release the documentation until FMI wired $110,000 to Global. Upon receipt of the demanded funds, Global said it would release the documents, absorb demurrage charges and continue under the Global contract.

31. On September 28, 2005, Global demanded an advance "good faith" payment from FMI to provide Global with comfort that it would be paid for its fish. Global threatened that, if such payment were not made, it would curtail shipments of fish under the Global Contract and sell its fish to other purchasers.

32. FMI, in order to prevent the loss of the product it had promised to Sang Jin in reliance on the Global Contract, forwarded $110,000 to Global on September 29, 2005 as an advance payment on future deliveries of frozen pink salmon.

### THIRD SHIPMENT – SEVEN CONTAINERS

33. Global's third shipment amounted to seven (7) containers of fish, and was shipped to Qingdao, China, on September 6, 2005.

34. Again, Global was tardy in presenting the necessary documentation to trigger the release of funds under the letter of credit. Because of quality concerns by the end customer of the seven containers, the end customer was not willing to pay for an

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

COMPLAINT

FMI Food Marketers International v. Global Seafoods North America

Page 9 of 19

Case No. 3AN-05-14099 CI

Exhibit 4
page 11 of 28