2592-13

Mark C. Manning
Mark C. Manning, P.C.
431 W. 7th Ave., Ste 204
Anchorage, Alaska 99501
(907) 278-9794 Fax: 278-1169
Counsel for Defendant

COPY
Original Received
JAN 11 2006
Clerk of the Trial Courts

COPY
Original Received
JAN 10 2006
Clerk of the Trial Courts

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| FMI FOOD MARKETERS INTERNATIONAL, LTD, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL SEAFOODS NORTH AMERICA, LLC <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 3AN-05-14099 Civ. |

### ANSWER

Defendant Global Seafoods answers the complaint in this action as follows:

1. Answering paragraph 1, Global admits the allegations in the first sentence. Except as admitted, the allegations are denied.

2. Answering paragraphs 2, 27, 31, 33 and 38, the allegations are admitted.

3. Answering paragraphs 3 and 50, the allegations raise questions of law and recite characterizations of the case requiring no response. To the extent any response is required, the allegations are denied.

4. Answering paragraph 4, Global is without information and knowledge sufficient to form a belief as to the truth of the allegations set forth therein and therefore denies them, except that FMI contracted to buy processed salmon from Global that apparently, based on documents received, was for resale in Asia.

5. Answering paragraphs 29, 37, 40, 42, 43, 47, 48, 51, 52, 54-56, 58-60, 62-65, 67-69, 72, 73, 75-78 and 80, the allegations are denied.

Exhibit 9
Page 1 of 6 Pages

6. Answering paragraphs 12, 14, 15, 16 and 28, Global is without information and knowledge sufficient to form a belief as to the truth of the allegations set forth therein and therefore denies them.

7. Answering paragraphs 46, 49, 53, 57, 61, 66, 71, 74, and 79, which refer to other paragraphs in the complaint, defendant incorporates by reference its responses to the referenced paragraphs.

8. Answering paragraphs 5 and 6, it is admitted that on or about February 9, 2005, FMI conveyed to Global a written offer to purchase processed salmon on certain terms, that on or about February 16, 2005, Global conveyed a written response, containing a hand written modification of one of FMI's proposed Quality terms, and that Exhibit A appears to be a copy of the response, except for the handwritten modification "52,000." Except as admitted, the allegations are denied.

9. Answering paragraph 7, it is admitted that on or about April 29, 2005, Global and FMI agreed to certain terms of sale, and that Exhibit B appears to be a copy of the document containing those terms. Except as admitted, the allegations are denied.

10. Answering paragraph 8, the allegations are admitted, understanding the market price referred to was the price paid to commercial fishermen for round fish. Otherwise, the allegations are denied.

11. Answering paragraph 9, it is admitted that Exhibits A and B are copies of documents that contain terms of sale, though not necessarily all terms of sale, upon which Global believed the parties were agreed as of April 28, 2005, and that "H&G" means headed and gutted. Except as admitted, the allegations are denied.

12. Answering paragraph 10, it is admitted that FMI agreed to advance $50,000.00 toward future costs of product purchases to finance Global's acquisition of a Vacuum cleaning system required for Bloodline removal, and that on or about March 15, 2005, FMI did advance $52,200 to Global for this purpose. Except as admitted, the allegations are denied.

13. Answering paragraph 11, it is admitted that a term of sale was the letter of credit provision that appears on Exhibit A at "Payment." Except as admitted, the allegations are denied.

*FMI v. Global Seafoods*
Case no. 3AN-05-14099CI
Global's Answer                                       2

Exhibit 9
Page 2 of 6 Pages

14. Answering paragraph 13, Global admits that a term of sale involved the presentation of certain documents to trigger payment under a letter of credit, and denies all other allegations.

15. Answering paragraph 17, Global admits that Global and FMI expected processed salmon to be delivered in a series of shipments, made as round salmon was delivered to Global's plant and was processed. Except as admitted, the allegations are denied.

16. Answering paragraph 18, Global admits that Global and FMI understood the processed salmon would be transported from Global's plant in Kodiak to Dutch Harbor, where it would be trans-shipped to freighters bound for ports in Asia, and that FMI would inform Global and its Global's shipping agent of the final shipping destination of the product when the product was ready to ship. Except as admitted, the allegations are denied.

17. Answering paragraph 19, Global admits that in August 2005 Global informed FMI that the machine Global had purchased to remove bloodlines did not perform satisfactorily, and asked whether FMI could accept salmon with bloodlines in. Except as admitted, the allegations are denied.

18. Answering paragraph 20, Global admits that, in view of the machine's failure to perform satisfactorily, it requested FMI to dispense with bloodline removal without reducing the price. Except as admitted, the allegations are denied.

19. Answering paragraph 21, Global admits that, on or about August 29, 2005, Global expected that the pink salmon it was processing would be of #1 quality, that Global would ship the quantity specified in the February 2005 document, and that Global would have additional salmon available for sale to FMI. Except as admitted, the allegations are denied.

20. Answering paragraph 22, Global admits that FMI agreed to accept salmon with bloodline in, with no change in price, except that a relatively small quantity of bloodline out was to be shipped to Thailand. Except as admitted, the allegations are denied.

21. Answering paragraph 23, Global admits the allegations in the first 3 sentences. Except as admitted, the allegations are denied.

22. Answering paragraph 24, Global admits that, after examining the first container,



Exhibit 9
Page 3 of 6 Pages

a would-be purchaser downstream from FMI reportedly demanded a discount on the price of the fish. Except as admitted, the allegations are denied.

23. Answering paragraph 25, referring to the first sentence, Global admits that it refused to offer any rebate or credit to the third party, and denies the sentence's remaining allegations. The paragraph's remaining allegations are denied for lack of sufficient information or knowledge. Except as admitted, the allegations are denied.

24. Answering paragraph 26, Global admits that Global arranged for an inspection for its own interest, that it received a report after the inspection, and that it declined FMI's request for a copy of the report. Except as admitted, the allegations are denied.

25. Answering paragraph 30, Global admits that Global told FMI that the letter of credit mechanism was unsatisfactory on a number of occasions, that Global requested FMI to remit a $110,000.00 deposit for future deliveries, and that Global would release documents concerning certain shipped containers and would continue to ship provided the deposit were made and provided the letter of undertaking form were amended to cure deficiencies. Except as admitted, the allegations are denied.

26. Answering paragraph 32, Global admits that FMI made the requested $110,000.00 deposit on or about September 29, 2005. Except as admitted, the allegations are denied.

27. Answering paragraph 34, Global denies the allegations in the first sentence, and denies the allegations in the second sentence for lack of sufficient information or knowledge.

28. Answering paragraph 35, Global admits that it refused to make any adjustment in the price of processed fish shipped in the 7 containers. Except as admitted, the allegations are denied. Global asserts affirmatively that it had no contract with the referenced "end customer," and that no such entity had any rights vis a vis Global.

29. Answering paragraph 36, Global denies the containers were sold. Global asserts affirmatively that it offered the containers again to FMI in December and that FMI declined them.

30. Answering paragraph 39, Global admits the allegations in the first sentence, denies the allegations in the second sentence for lack of sufficient information or knowledge, and denies all other allegations.

*FMI v. Global Seafoods*
Case no. 3AN-05-14099CI
Global's Answer                                    4

Exhibit 9
Page 4 of 6 Pages

31. Answering paragraph 41, Global admits that it sold significant quantities of processed salmon to other customers in 2005. Except as admitted, the allegations are denied.

32. Answering paragraph 44, Global admits that it did not expressly offer FMI any processed fish over and above the 1,000.00 MT ± 10.0% FMI apparently wanted, and that Global sold some processed fish to other parties. Except as admitted, the allegations are denied.

33. Answering paragraphs 45 and 70, Global admits that it continues to hold the $110,000.00 deposit, pending a resolution and final accounting of this matter. Except as admitted, the allegations are denied.

34. All allegations not expressly admitted are denied.

## AFFIRMATIVE DEFENSES

1. The complaint fails to state a claim upon which relief can be granted.
2. FMI failed seasonably to provide agreed letters of credit.
3. FMI obstructed timely presentation of documents for payment on letters of credit.
4. Any duty Global had to tender and complete delivery was suspended or terminated by reason of failure to tender agreed payment.
5. FMI wrongfully withheld payment pending inspection.
6. FMI represented that the processed salmon it wished to purchase was to be canned.
7. If Global is liable on any claim or claims by FMI, Global is entitled to offset against that liability all expenses it has incurred by reason of FMI's wrongful conduct, such as, but not limited to, demurrage charges resulting from untimely payment and from delay in returning documents.
8. FMI has failed to mitigate its damages.
9. FMI's claims are barred by the doctrines of waiver, estoppel and/or unclean hands.

/
/

*FMI v. Global Seafoods*
Case no. 3AN-05-14099CI
Global's Answer            5

Exhibit 9
Page 5 of 6 Pages

WHEREFORE, Defendant prays as follows:

1. that the Complaint be dismissed with prejudice;

2. that Defendant be awarded costs and fees incurred in defense of this action; and

3. that the court award any other relief it deems appropriate.

DATED this 11th day of January, 2006, at Anchorage, Alaska.

MARK C. MANNING, P.C.
Counsel for Defendant

By: /s/ Mark C. Manning
Mark C. Manning
Alaska Bar No.: 8110066

I certify that a copy of the foregoing has been served by mail/hand/ fax on 1/11/06 on

Michael R. Mills, Esq.
Michael A. Grisham, Esq.
DORSEY & WHITNEY LLP
1031 W. 4th Avenue, Ste. 600
Anchorage, AK 99501-5907

/s/ Mark C. Manning
Christina Childers

*FMI v. Global Seafoods*
Case no. 3AN-05-14099CI
Global's Answer                                    6

Exhibit 9
Page 6 of 6 Pages