Michael R. Mills, ABA# 8911074
Michael A. Grisham, ABA# 9411104
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Attorneys for FMI Food Marketers International, Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FMI FOOD MARKETERS INTERNATIONAL, LTD.<br><br>Plaintiff<br>vs.<br><br>GLOBAL SEAFOODS NORTH AMERICA, LLC<br><br>Defendant | Case No. 3:06-CV-00011 JWS |

**AFFIDAVIT OF BENT HOLME IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

STATE OF ALASKA      )
                     ) ss.
THIRD JUDICIAL DISTRICT  )

I, Bent Holme, being first duly sworn, hereby depose and state:

1. I work with FMI Food Marketers International, Ltd. under a contractual arrangement. I am fully competent to address the issues raised herein, and make this affidavit from personal knowledge.

2. FMI is a Vancouver-based seafood broker, which purchases seafood from processors in the U.S. and Canada and re-sells it to international wholesale customers,

primarily in Asia. FMI's business is focused on Pacific salmon, and it has long been an active participant in the Alaska salmon market.

3. In my position with FMI, I had reason to monitor the market prices for various fish in 2005, including pink salmon. The market price for high-quality pink salmon continued to rise throughout early 2005.

4. FMI entered into a contract with Global on February 9, 2005, which was in all material respects (except quantity) the same as the 2004 contract between the parties. In April 2005, Global requested a price increase for the 2005 contract. As a condition of accepting this price increase, FMI requested a fixed quantity of 1000 metric tons and a right of first refusal for all additional #1 quality pinks. Global agreed to these additional terms. However, Global did not inform me or anyone else at FMI of plans to sell significant quantities of #1 pinks directly to other customers in 2005. In the end, Global never offered FMI any fish under the right of first refusal in 2005.

5. Global had purchased a vacuum system to produce fish with the bloodline out, as per its contract with FMI, with a loan of $52,500 from FMI. On August 9, 2005, prior to Global's first shipment of fish, Global informed FMI that it was having trouble with the vacuum system, and requested that it be excused from its contract obligation to remove the bloodlines from its processed fish.

6. The quantity of fish that Global had promised to provide would amount to approximately 45 cargo containers, weighing just over 20 metric tons per container. FMI and Sang Jin understood that the fish would be shipped in stages, with shipments being made as the salmon catch came into Global's plant and was processed. The fish was to

AFFIDAVIT OF BENT HOLME IN
SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

*FMI Food Marketers, Int'l v. Global Seafoods*

Page 2

Case No. 3:06-cv-00011 JWS

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

be transported from Global's plant in Kodiak to Dutch Harbor, where it would be loaded onto cargo ships bound for Asia. As in 2004, FMI was to inform Global of the final shipping destination of the product when the product was ready to ship. FMI had in place all payment mechanisms, including letters of credit, prior to the shipment of product by Global.

7. Although various terms are used to describe fish quality, "#1 quality" is an accepted and uniformly understood industry standard referring to a specific quality range of fish. #1 is the highest, or premium grade, #2 a step below, and #3 the lowest quality generally unusable for commercial sales. To further clarify the quality provisions of the 2004 and 2005 contracts with Global, there were very specific standards included that were based upon the Alaska Seafood Marketing Institute Recommendations.

8. Because of the poor quality of the fish supplied by Global that failed to meet with #1 quality grade and also many of the specific standards in the 2005 contract, and because FMI was forced to deny its valid but untimely claims, FMI's ability to sell fish to Y.S. Trading in the future has been severely damaged.

9. The standard in the fish processing industry is that the processor is ultimately responsible for quality. Because the processor has a reputation to uphold, it is standard practice in the industry for the processor to step forward to defend against any quality-based claims.

10. All documents marked with the letters "FMI" preceding a number are authentic copies of documents created or received by FMI in the normal course of its business operations.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

AFFIDAVIT OF BENT HOLME IN
SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

*FMI Food Marketers, Int'l v. Global Seafoods*

FURTHER AFFIANT SAYETH NAUGHT.

_____
Bent Holme

SUBSCRIBED AND SWORN to before me this ____ day of November, 2006.



_____
Notary Public in and for the State of WA
My Commission Expires: 10-10-10

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 30, 2006, a true and correct copy of this document was served on:

Mark C. Manning
431 West 7th Avenue, Suite 204
Anchorage, AK 99501

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

_____/s/ Michael R. Mills_____
Michael R. Mills

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

AFFIDAVIT OF BENT HOLME IN
SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

*FMI Food Marketers, Int'l v. Global Seafoods*