Mark C. Manning
Mark C. Manning, P.C.
431 W. 7th Ave., Ste 204
Anchorage, Alaska 99501
(907) 278-9794 Fax: 278-1169
Counsel for Global Seafoods

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| FMI FOOD MARKETERS INTERNATIONAL, LTD, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL SEAFOODS NORTH AMERICA, LLC <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 3:06-cv-00011 JWS |

### DECLARATION OF JAMES PORTILLO
28 U.S.C. §1746

James Portillo states the following under penalty of perjury:

1. I am an adult, am competent to give testimony, and have personal knowledge of the facts set forth herein.

2. I am the quality control manager at Global Seafoods' Kodiak processing plant. I held that position in 2004 and 2005. I have been in the Alaska fish processing industry for 13 years and in quality control for 12 years. I supervise a staff of about 5 people under the Quality Control Department.

3. There was no difference in quality control procedures between the 2004 and 2005 pink salmon seasons. Based on my personal observations and the reports that were provided to me in my capacity as quality control manager, in my opinion the quality of H&G pink salmon Global shipped in 2004 and 2005 was the same. In both seasons, quality control procedures included the following.

A. As soon as the delivering vessel arrived at the plant, the temperature of its holding tank water was checked to make sure it was cold enough. The fish was then pumped out of the



Exhibit C
Page 1 of 2 Pages

vessel to the sorting line. Samples of the boat's delivery were graded for texture, eye and gill appearance (which is evidence of freshness), skin surface for bruises, odor, belly burn and scale loss.

    B. The fish was then brought into the plant for processing into H&G. After processing into H&G, samples were checked for weight, size range, meat odor, meat texture, belly burn, external bruising, scale loss and viscera line. We inspected the body cavity of sample fish to check for belly burns, if we thought or noted fish were not mostly firm in texture. If severe outside bruising was found at this stage, the fish were discarded. This was uncommon.

    C. The product was then sorted by species, weighed and frozen. The temperature of freezing was logged.

    D. The product was taken from the freezer and glazed and packed. During this process, quality control personnel randomly checked frozen blocks for glazing and weight. Underweight product was thawed and re-processed, but underweight occurred seldom.

    4. We were not aware of any significant amount of internal bruising, which means bruising in the meat of the fish, in finished pink H&G product during the 2004 or 2005 seasons. Our quality control inspections found no significant odors or other quality problems with the 2005 H/G Pink Salmon product.

    5. I am very familiar with ASMI fish grading standards for fish, including standards that apply to H&G pink salmon. ASMI stands for Alaska Seafood Marketing Institute. There has been no ASMI "#1" standard for H&G pink salmon. Number 1 quality is a term used in the Alaska seafood industry to refer to fish, including pink H&G. It generally means fish of the highest quality level, with 2, 3 and 4 being the other levels. Outside bruising, or bruising of the skin, is rated none, slight, moderate and severe. In my opinion, in the industry number 1 quality means no external bruises. If moderate bruising is permitted by a customer, then in my opinion the customer would be accepting number 2 fish. Also, number 1 fish would not have the blood line left in, nor would they have moderate inside bruising, meaning bruising of the meat.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on January 20, 2007.

_____
JAMES PORTILLO

Exhibit __C__
Page __2__ of __2__ Pages