IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| FMI FOOD MARKETERS INTERNATIONAL, LTD,<br><br>        Plaintiff,<br><br>v.<br><br>GLOBAL SEAFOODS NORTH AMERICA, LLC<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 3:06-cv-00011 JWS<br>) |

DECLARATION OF THOMAS HENNESSEY
28 U.S.C. §1746

Thomas Hennessey states the following under penalty of perjury:

1.    I am an adult, am competent to give testimony, and have personal knowledge of the facts set forth herein.

2.    I have been controller at Global Seafoods North America LLC since May 2001. In that capacity I am the primary person at Global who handles Global's participation in matters concerning letters of credit, the preparation of documents pertaining to documentary letters of credit and sales, and communications with Ellen Thompson at ETS, Global's freight forwarder who prepares bills of lading and certain other sales-related documents in consultation with me and with customers. For the FMI contracts, preparation of the required documents required the involvement of FMI, the carrier, APL, Global's freight forwarder, ETS, Global and NOAA, which issued a Certificate of Health. NOAA must issue its certificate after APL issues booking information. The Certificate of Health may be issued in as little as 2 business days, but often 5 to 7 business days are required by NOAA administration. The Bill of Lading is usually issued within 5 days of issuance of the booking information. These documents were prepared in the Seattle area, and tendered as required to Global's bank in Seattle, Wells Fargo. The original documents then had to be couriered to HSBC Bank in Vancouver, Canada.

3.    A documentary letter of credit should afford the beneficiary, in Global's position, a high degree of protection against not being paid for goods shipped abroad. The bank that issues the credit is obligated to pay a draft on the credit upon the timely presentation of the required documents prepared in strict accordance to the terms of the credit. The beneficiary thus avoids the risk of only being able to look to the purchaser of goods for payment.

Exhibit B
Page 1 of 51 Pages

4. There were multiple problems with timely presentation of documents in order to draw on the letters of credit pertaining to the 2004 FMI/Global purchase and sale contract. The problem was that the letters of credit contained unrealistically short deadlines on the presentation of documents at HSBC Bank in Vancouver. Global had no input on the short deadlines provided, and would have certainly provided for longer periods had it been able to specify them. The principal problem was obtaining timely certificates of health from the U.S. Department of Commerce (NOAA), which had to be issued for each shipment after it had been booked. Global had no control over whether that office would complete the paperwork quickly enough to enable Global to meet the applicable letter of credit deadline, and several times it did not. The unreasonably short deadlines did not ultimately matter, however, because all timeliness discrepancies were waived and Global was paid.

5. If documents are not presented in the proper form and within the time period required in a credit, a "discrepancy" arises barring the beneficiary in Global's position from drawing on the letter until and unless the discrepancy is cured (if possible) or waived.

6. In 2005, Global was provided a copy of the first letter of credit FMI transferred shortly before shipment of FMI's product commenced. It provided that the documents required for presentation to draw on the credit had to be received within 8 days from the shipment date by HSBC Bank Canada. No draft form of this letter of credit had been provided to Global for approval beforehand, and in particular Global had not approved the 8 day presentation period. The experiences in 2004 with discrepancies resulting from untimely document presentation made it clear that so short a period would be bound to produce discrepancies in 2005, nullifying the highly desirable protection against non-payment credits provide, unless the course of dealing established in 2004 of waiving discrepancies arising from untimely document presentation was honored. Not foreseeing that eventuality and with assurances from Bent Holme in late August that all time/presentation discrepancies would be waived, Global did not insist on amending the LCs. Without this assurance, neither of the 3 letters of credit would have been acceptable to Global, because all suffered from time/ presentation deadlines that were too short and were bound to produce discrepancies. Once we received notice that time discrepancies would not be waived, we could not ship to FMI because we no longer had assurance of payment on the letters of credit it provided.

7. Attached as Exhibit B pages 31 through 51 are true and correct copies of the letters of credit that were opened at Wells Fargo in Global's favor to pay for shipments under the 2005 FMI contract.

8. There was a series of 4 separate shipments of containers of pink salmon under the 2005 FMI contract before Global suspended further shipments, containing 7, 6, 7 and 13 containers, respectively. Time-related discrepancies occurred in connection with the first and third shipments. The second was paid by check, not letter of credit. Yet another time-related discrepancy arose in respect of the letters of credit pertaining to the last shipment of 13 containers, caused by changes by Bent Holme at FMI to which letters of credit containers should be paid for with. Mr. Holme changed his instruction regarding which containers should be assigned to which letter of credit and each change required that new documents be created.



Exhibit B
Page 2 of 51 Pages

9. Global is a relatively small fish processing company operating on low net margins and free cash. Additionally the Company has available from its bank only a very small line of credit. For this reason we are materially dependant on a fast and predictable conversion of our inventory into cash; actual or threatened disruptions to this cycle jeopardize the procurement of raw material, the payment of operating expenses and negatively impact all forms of business relations with customers and vendors. This is especially harmful as the Company is a relatively new operator in Alaskan fisheries and has worked hard over the past few years to build productive relations. Our decision to redirect pink salmon shipments to another buyer was caused by FMI's refusal to pay as agreed for the 20 containers in the third and fourth shipments. We knew that the Company simply did not have the working capital to absorb any delay in payment for these containers and had no option but to look for another buyer. Our fears were realized, as their action had a materially adverse effect on the Company's cash-flow by delaying for weeks the receipt of nearly $400,000 and causing the Company to incur about $125,000 in additional net expense related to the storage, sale and reshipment of 7 of these containers, five months later. These events harmed the Company by causing us to delay payments to fishermen, vendors and employees to the extent that we have damaged our credit rating and have recently been unable to maintain our fishing fleet and an adequate supply of raw material to our plant.

10. Attached hereto as Exhibit B 4 and 5 are true and correct copies of the demurrage charge and check in payment of the demurrage charge, for the 13 containers originally intended for FMI that were re-directed after a cure of the letter of credit discrepancy issue could not be effected. This charge was incurred before the containers were re-sold.

11. Attached here to as Exhibit B46 through 20 are records containing my calculation of the costs incurred in connection with the storage and re-sale of the 7 FMI containers comprising the third shipment. The documents pertaining to these containers were submitted to Wells Fargo for payment under a FMI letter of credit in mid-September. The draft was not paid because discrepancies were not waived, and my re-collection is that it was late November before we received the documents back and were in a position to re-sell the containers.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 19, 2007.

_____
THOMAS HENNESSEY

Exhibit B
Page 3 of 57 Pages

(3) Re-sale 7 containers

(Results of offers)

and calculation of claim

Exhibit B
Page 4 of 51 Pages

Global Seafoods North America, LLC
FMI
Pink Salmon Contract

|   |   |   |   |   |   | | | Net Revenue on Subsequent Sale | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
|   |   |   |   |   |   | Demurrage | Storage | Contract | Actual | Freight-out | Total Claim |
| 1 | B/L no. | ECHO2892 | APL Thailand V/089 | Sept. 6, 2005 |   | 78,909 | 4,469 | 144,725 | (177,874) | 27,565 | 77,794 |
|   | GS ref no. | Original container no. | New container no. | Kgs. | | | | | | | |
|   | C10306 | SEAU525960-0 | APLU692278-6 | 21,951 | | | | | | | |
|   | C10303 | SEAU526295-9 | APLU692793-6 | 21,733 | | | | | | | |
|   | C10302 | SEAU525588-3 | APRU500059-2 | 21,963 | | | | | | | |
|   | C10305 | SEAU525860-3 | APRU505117-8 | 21,996 | | | | | | | |
|   | C10299 | SEAU525715-0 | TRLU199206-3 | 21,997 | | | | | | | |
|   |   |   |   | 109,640 | | | | | | | |
|   |   |   |   |   |   | | | Net Revenue on Subsequent Sale | | | |
|   |   |   |   |   |   | Demurrage | Storage | Contract | Actual | Freight-out | Total Claim |
| 2 | B/L no. | ECHO2898 | APL Thailand V/089 | Sept. 6, 2005 |   | 54,142 | 6,666 | 57,807 | (83,571) | 11,996 | 47,040 |
|   | GS ref no. | Original container no. | New container no. | Kgs. | | | | | | | |
|   | C10296 | SEAU525378-8 | APLU694887-8 | 21,715 | | | | | | | |
|   | C10298 | SEAU526358-0 | TRLU194902-5 | 22,078 | | | | | | | |
|   |   |   |   | 43,793 | | | | | | | |
|   |   |   |   | 153,433 | | 133,051 | 11,135 | 202,532 | (261,445) | 39,561 | 124,833 |



# Invoice

**Echo-Translink Systems (ETS) LLC**

10655 NE 4th Street, Suite 400
Bellevue, WA 98004 U.S.A.
Phone: 1.425.467.1804
Fax: 1.425.709.8831



| DATE | INVOICE # |
|---|---|
| 3/27/2006 | 12476 |

**BILL TO**

GLOBAL SEAFOODS NORTH AMERICA, LLC
11100 NE 8TH ST., SUITE 310
BELLEVUE, WA 98004

| BOOKING | TERMS | DUE DATE | SHIP DATE | SHIP VIA | CNF | B/L - AWB |
|---|---|---|---|---|---|---|
| NCX038076 | Due on receipt | 3/27/2006 | 2/24/2006 | OCEAN | KLAIPEDA | NCX038076 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| OCEAN FREIGHT (QINGDAO - HAMBURG - KLAIPEDA), CFS QINGDAO, THC QINGDAO, BAF, PORT PLUG-IN, CONTAINER FEES, EXPORT HANDLING. CMA CGM STRAUSS NX202W CGMU4812474 (PINK SALMON) CGMU4841343 (PINK SALMON) CRLU5162406 (PINK SALMON) GESU9066370 (PINK SALMON) TRLU1601493 (PINK SALMON) REF. BALTEXPRESS | 5 | 5,513.00 | 27,565.00 |

Thank you for your business.

**Total** $27,565.00

Exhibit B
Page 6 of 51 Pages



# Invoice

**Echo-Translink Systems (ETS) LLC**
10655 NE 4th Street, Suite 400
Bellevue, WA 98004 U.S.A.
Phone: 1.425.467.1804
Fax: 1.425.769.8831



| DATE | INVOICE # |
|---|---|
| 6/27/2006 | 12546 |

**BILL TO**
GLOBAL SEAFOODS NORTH AMERICA, LLC
11100 NE 8TH ST., SUITE 310
BELLEVUE, WA 98004



| BOOKING | TERMS | DUE DATE | SHIP DATE | SHIP VIA | CNF | B/L - AWB |
|---|---|---|---|---|---|---|
| NX232W/232W | Due on receipt | 6/27/2006 | 6/11/2006 | OCEAN | KLAIPEDA | NX232W/232W |

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| OCEAN FREIGHT (QINGDAO-HAMBURG-KLAIPEDA), CFS QINGDAO, THC QINGDAO, BAF, PORT PLUG-IN, CONTAINER FEES, EXPORT HANDLING. CMA CGM BAUDELAIRE NX232W/232W CGMU4798397 (16 KG BAGS / SALMON) | | 5,898.15 | 5,898.15 |
| REF. UAB ORKOS | | | |
| OCEAN FREIGHT (QINGDAO-HAMBURG-KLAIPEDA), CFS QINGDAO, THC QINGDAO, BAF, PORT PLUG-IN, CONTAINER FEES, EXPORT HANDLING. CMA CGM BAUDELAIRE NX232W/232W TRLU1616322 (23 KG BOXES / SALMON) | | 5,898.15 | 5,898.15 |
| REF. DELL TRADE | | | |
| BL AMENDMEND FEES | | 200.00 | 200.00 |

Thank you for your business.

**Total** $11,996.30




**WELLS FARGO**

Page 4 of 6
954
Global Seafoods North America Llc
Account Number: 110-1850620
                  1101850620
Statement End Date: 12/31/05

## Electronic Debits/ Bank Debits

| Effective Date | Posted Date | Amount | Transaction Detail |
|---|---|---|---|
| | Dec 09 | 583.62 | WT Fed#00595 Bank of America /Ftr/Bnf=hall Street Cold Storage Srf# IN05120908033408 Trn#051209021206 Rfb# 000000208 |
| | Dec 13 | 10,144.64 | WT Seq#41320 Samson Tug & Barge Comp /Bnf=samson Tug & Barge Company, Inc. Srf# IN05121311164541 Trn#051213041320 Rfb# 000000211 |
| | Dec 13 | 2,724.35 | Wells Fargo Auto Pay 051212 485620020838980 Morozov,Sergey |
| | Dec 14 | 884.90 | REF=SKE552387/Pay #001 Amendment Fee |
| | Dec 14 | 619.11 | WT 051214-031665 Laurentian Bank of /Bnf=imperial Cold Storage Srf# IN05121408542486 Trn#051214031665 Rfb# 000000212 |
| | Dec 14 | 574.00 | REF=SKE551069/Pay #003 Neg/Pmt/Exam Commission |
| | Dec 15 | 3,000.00 | WT Fed#00920 Us Bank /Ftr/Bnf=sergey Morozov Srf# IN05121508383192 Trn#051215036254 Rfb# 000000213 |
| | Dec 15 | 3,000.00 | WT Seq#36446 Marites Medina /Bnf=ricardo Medina Srf# IN05121508403316 Trn#051215036446 Rfb# 000000214 |
| | Dec 15 | 1,500.00 | WT Seq#36752 Mila J York /Bnf=mila York Srf# IN05121508440553 Trn#051215036752 Rfb# 000000215 |
| | Dec 16 | 1,500.00 | WT Seq#55819 Jaime A Portillo /Bnf=james Portillo Srf# IN05121611494880 Trn#051216055819 Rfb# 000000216 |
| | Dec 21 | 2,210.52 | WT 051221-029076 Volksbank Bremerhav /Bnf=noord Food Logistik & Service Srf# IN05122108234001 Trn#051221029076 Rfb# 000000217 |
| | Dec 22 | 30,000.00 | Online Transfer - To Fund 12/22/05 Payroll Ref #IBET9KX29D |
| | Dec 22 | 3,000.00 | WT Fed#01314 Washington Mutual /Ftr/Bnf=tom Hennessey Srf# IN05122209353237 Trn#051222038275 Rfb# 000000219 |
| | Dec 22 | 2,520.02 | WT 051222-037715 Volksbank Bremerhav /Bnf=noord Food Logistik & Service Srf# IN05122209311574 Trn#051222037715 Rfb# 000000218 |
| | Dec 27 | 4,700.00 | Online Transfer - To Fund Account Ref #IBEBSBL8Pz |
| | Dec 28 | 6,329.54 | Wells Fargo Auto Pay 051227 547464880089654 Nikitanko,Oleg |
| | Dec 29 | 78,909.00 | WT Fed#01918 China Merchants Ba /Ftr/Bnf=lv Shengjin Srf# IN05122911270639 Trn#051229049171 Rfb# 000000220 |
| | Dec 29 | 37,930.00 | WT Fed#02207 Bank Of America, N /Ftr/Bnf=echo Translink Systems Srf# FW038666363013450 Trn#051229062587 Rfb# *NOT On-line* |
| | Dec 30 | 67,000.00 | Online Transfer - To Fund Account Ref #IBE2467Qyp |
| | Dec 30 | 25,000.00 | WT Seq#28179 Samson Tug & Barge Comp /Bnf=samson Tug & Barge Srf# IN05123007595574 Trn#051230028179 Rfb# 000000222 |
| | Dec 30 | 9,000.00 | WT Seq#27987 Kodiak Fishmeal Company /Bnf= Srf# IN05123007575536 Trn#051230027987 Rfb# 000000221 |

next page

Exhibit B
Page 8 of 51 Pages

$4,468.73

# 发 票
## INVOICE

TO: GLOBAL SEAFOODS NORTH AMERICA, L.L.C.  
QINGDAO PUBLIC BONDED WAREHOUSE CO., LTD.  

Date: 31/01/2006  
INVOICE NO: QPBW06C131 C

Ocean Vessel: APL /ECHO  
B/L: ECHO2892  
Description: FROZEN Pink Salmon H&G    23kg

| 费 用<br>All charges | 人民币（元）<br>RMB(Yuan) | 美元<br>USD |
|---|---|---|
| 仓储费（RMB2.20/MT/DAY）<br>Storage fee (01/01/06-31/01/06) | 2204.95 | 279.1076 |
| 装卸费(RMB20.00/MT)<br>Loading/unloading fee | 770.96 | 97.58987 |
| 降温费（RMB20.00/MT）<br>Lowering Temperature fee | 770.96 | 97.58987 |
| 分规格费（RMB4.00/MT）<br>Selecting size fee | 154.19 | 19.51772 |
| 代理手续费（RMB10.00/MT）<br>Commission fee | 385.48 | 48.79494 |
| 运输费（RMB900.00/40'）<br>Trucking fee | 0.00 | 0 |
| 换单代理费（RMB100.00/LOT）<br>Changing documents fee | 0.00 | 0 |
| 报关费（RMB300.00/LOT）<br>Applying to Customs fee | 300.00 | 37.97468 |
| 报验费（RMB200.00/LOT）<br>Commodity Inspection fee | 200.00 | 25.31646 |
| 贸易代理费（RMB10.00/MT）<br>Trading Agent fee | 385.48 | 48.79494 |
| 合计<br>Total | 5,172.02 | 654.69 |

exchange rate: USD1.00 : RMB7.9

除仓储费，每天按库存计算，我们会在每月的月底前通知您。上述其它费用均为一次性费用。  
Except Storage fee which will be calculated according to stock per day, all above the other expenses should be paid for only once, and we will inform you the amount storage fee by the end of every month.

12-6550-02

Exhibit B  
Page 9 of 51

# 发 票
## INVOICE

TO: GLOBAL SEAFOODS NORTH AMERICA, L.L.C.  
:QINGDAO PUBLIC BONDED WAREHOUSE CO., LTD.  
Ocean Vessel: APL /ECHO  
B/L: ECHO2892 ✓  
Description: FROZEN Pink Salmon H&G   16kg  

Date:31/01/2006  
INVOICE NO: QPBW060  

| 费 用<br>All charges | 人民币（元）<br>RMB(Yuan) | 美元<br>USD |
|---|---|---|
| 仓储费（RMB2.20/MT/DAY）<br>Storage fee (01/01/06-31/01/06) | 4254.65 | 538.56329 |
| 装卸费(RMB20.00/MT)<br>Loading/unloading fee | 1487.64 | 188.30886 |
| 降温费（RMB20.00/MT)<br>Lowering Temperature fee | 1487.64 | 188.30886 |
| 分规格费（RMB4.00/MT)<br>Selecting size fee | 297.53 | 37.662025 |
| 代理手续费（RMB10.00/MT)<br>Commission fee | 743.82 | 94.15443 |
| 运输费（RMB900.00/40'）<br>Trucking fee | 5000.00 | 632.91139 |
| 换单代理费（RMB100.00/LOT)<br>Changing documents fee | 100.00 | 12.658228 |
| 报关费（RMB300.00/LOT)<br>Applying to Customs fee | 300.00 | 37.974684 |
| 报验费（RMB200.00/LOT)<br>Commodity Inspection fee | 200.00 | 25.316456 |
| 贸易代理费（RMB10.00/MT)<br>Trading Agent fee | 743.82 | 94.15443 |
| 合计<br>Total | 14,615.10 | 1850.01 |

exchange rate:USD1.00:RMB7.9  
除仓储费，每天按库存计算，我们会在每月的月底前通知您。上述其它费用均为一次性费用。  
Except Storage fee which will be calculated according to stock per day, all above the other expenses should be paid for only once, and we will inform you the amount storage fee by the end of every month.

Exhibit B  
Page 10 of 51



# 发 票
## INVOICE

TO: GLOBAL SEAFOODS NORTH AMERICA, L.L.C.  
QINGDAO PUBLIC BONDED WAREHOUSE CO., LTD.  
Ocean Vessel: APL /ECHO  
B/L: ECHO2892  
Description: FROZEN Pink Salmon H&G    23kg

Date: 28/02/2006  
INVOICE NO: QPBW060228 B

| 费 用<br>All charges | 人民币（元）<br>RMB(Yuan) | 美元<br>USD |
|---|---|---|
| 仓储费（RMB2.20/MT/DAY）<br>Storage fee（01/02/06-18/02/06） | 1526.50 | 193.2278 |
| 装卸费(RMB20.00/MT)<br>Loading/unloading fee | 0.00 | 0 |
| 降温费（RMB20.00/MT）<br>Lowering Temperature fee | 0.00 | 0 |
| 分规格费（RMB4.00/MT）<br>Selecting size fee | 0.00 | 0 |
| 代理手续费（RMB10.00/MT）<br>Commission fee | 0.00 | 0 |
| 运输费（RMB1000.00/40'）<br>Trucking fee | 5000.00 | 632.9114 |
| 换单代理费（RMB100.00/LOT）<br>Changing documents fee | 0.00 | 0 |
| 报关费（RMB300.00/LOT）<br>Applying to Customs fee | 300.00 | 37.97468 |
| 报验费（RMB200.00/LOT）<br>Commodity Inspection fee | 0.00 | 0 |
| 贸易代理费（RMB10.00/MT）<br>Trading Agent fee | 743.82 | 94.15443 |
| 合计<br>Total | 7,570.32 | 958.27 |

exchange rate: USD1.00:RMB7.9

除仓储费，每天按库存计算，我们会在每月的月底前通知您。上述其它费用均为一次性费用。

Except Storage fee which will be calculated according to stock per day, all above the other expenses should be paid for only once, and we will inform you the amount storage fee by the end of every month.

Exhibit B  
Page 11 of 51 Pages



发 票
## INVOICE

TO: GLOBAL SEAFOODS NORTH AMERICA, L.L.C.  
A:QINGDAO PUBLIC BONDED WAREHOUSE CO., LTD.  
Ocean Vessel: APL /ECHO  
B/L: ECHO2892  
Description: FROZEN Pink Salmon H&G   16kg  

Date:28/02/2006  
INVOICE NO: QPBW0602

| 费 用<br>All charges | 人民币（元）<br>RMB(Yuan) | 美元<br>USD |
|---|---|---|
| 仓储费 （RMB2.20/MT/DAY）<br>Storage fee （01/02/06-18/02/06） | 2945.53 | 372.851899 |
| 装卸费(RMB20.00/MT)<br>Loading/unloading fee | | |
| 降温费 （RMB20.00/MT)<br>Lowering Temperature fee | | |
| 分规格费 （RMB4.00/MT)<br>Selecting size fee | | |
| 代理手续费 （RMB10.00/MT)<br>Commission fee | | |
| 运输费 （RMB1000.00/40'）<br>Trucking fee | 5000.00 | 632.911392 |
| 换单代理费 （RMB100.00/LOT)<br>Changing documents fee | | |
| 报关费 （RMB300.00/LOT)<br>Applying to Customs fee | | |
| 报验费 （RMB200.00/LOT)<br>Commodity Inspection fee | | |
| 贸易代理费 （RMB10.00/MT)<br>Trading Agent fee | | |
| 合计<br>Total | 7,945.53 | 1005.76 |

exchange rate:USD1.00:RMB7.9  
除仓储费，每天按库存计算，我们会在每月的月底前通知您。上述其它费用均为一次性费用。  
Except Storage fee which will be calculated according to stock per day, all above the other expenses should be paid for only once, and we will inform you the amount storage fee by the end of every month.

Exhibit B  
Page 12 of 51